# EXHIBIT F

```
                                                                   1
 1                     IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF SOUTH CAROLINA
 2                         CHARLESTON DIVISION

 3

 4    --------------------------------
                                       :
 5    LISA J. PRIESTER,                :
      INDIVIDUALLY, AND AS             :
 6    PERSONAL REPRESENTATIVE OF       :
      THE ESTATE OF DAVID A.           :
 7    PRIESTER, JR.,                   :
                                       :
 8                       Plaintiff     :  No. 2:14-CV--01108-DCN
                                       :
 9           vs.                       :
                                       :
10    FUTURAMIC TOOL &                 :
      ENGINEERING COMPANY; CAPITAL     :
11    WELDING, INC.; MCMASTER-CARR     :
      SUPPLY COMPANY; AND INTEC        :
12    AUTOMATED CONTROLS, INC.,        :
                                       :
13                       Defendants    :
                                       :
14    --------------------------------

15

16              Deposition of: DARYL L. EBERSOLE, P.E.

17              Taken by      : MARK H. WALL, Esquire

18              Before        : JOYCE A. WISE, RMR

19              Date          : February 19th, 2016

20              Place         : Robson Forensics
                                354 North Prince Street
21                              Lancaster, PA  17603

22

23

24

25
```

44

1   Q.   Well, doesn't matter.
2        What do the brakes have to do with causing
3   Slider Number 2 not to extend?
4   A.   The brakes were -- that were being added were
5   intended to release when the motors would run and engage
6   when the motors would stop.
7   Q.   What did Slider -- what did the redundant brakes
8   do to cause Slider Number 2 not to fully extend on
9   March 18th?
10  A.   The logic changes that they made affected the
11  control system.  And there were parts of that that
12  controlled the brakes.  And that part worked to hold the
13  brakes when the motor was not turning.
14       However, they did more than that.  And it
15  removed safety aspects.  And their work did not include
16  the commissioning to the design of the system.
17  Q.   What caused Slider Number 2 not to come out on
18  March 18th?  Was it mechanical or electrical?
19  A.   It was caused by a communication loss.
20  Q.   Was it mechanical or electrical?
21  A.   It was electrical or part of the electrical
22  system.
23  Q.   What in the electrical system did not function
24  properly to prevent Slider Number 2 from coming out on
25  March 18th?

JOYCE A. WISE, RMR, (717) 299-8091

```
 1     A.   The bit for starting the drive did not
 2  effectively communicate to the drive and the system
 3  design, which included communication loss, detection had
 4  been effectively removed by the work that SAR had done,
 5  such that it allowed the system to continue further.
 6          There were manual changes that were made by SAR
 7  that allowed sliders to continue while one would not
 8  continue.
 9          And, again, not having completed it to the
10  design, this allowed for sliders to go out and create a
11  partial work surface with a hole where Slider 2 should
12  have been.
13     Q.   You're aware that Intec was down in Boeing
14  between March 26th and April 1 and found nothing improper
15  about the PLC, correct?
16          MR. DEAN:  I object to the form of the question.
17          THE WITNESS:  My understanding is that they
18  attempted to replicate the problem and they did not manage
19  to do that.
20          However, there was a precedent occurrence.  And
21  regardless, communication loss can occur.  The system was
22  designed to include it.
23          By SAR's actions, they effectively removed that
24  from the design.
25
```

```
                                                                    72
 1   BY MR. ROZELSKY:
 2      Q.   Yes.
 3      A.   Yes.
 4      Q.   Or as it relates to anything after Boeing --
 5   after -- let me get the date -- after November the 23rd of
 6   2012?
 7      A.   There was -- there was a commissioning that was
 8   not completed, which resulted in the system not being
 9   completed to the design, and this was a cause.  As well as
10   there were modifications that related to the manual
11   control.
12      Q.   And the modifications that were made to the
13   manual control, do you have an opinion as to why those had
14   an effect as to what happened on the night of this
15   incident?
16      A.   Yes, that was part of it.
17      Q.   Did you make a determination as to what was the
18   proximate cause of the failure of Slider 2 on the night of
19   the incident?
20      A.   Well, at the time of the incident, Slider 2
21   failed to extend.  The failure was a result of loss of
22   communications.  And that was the initial reason the motor
23   didn't move.
24           There were missing -- things that were removed
25   from the design that resulted in this not failing in a
```

JOYCE A. WISE, RMR, (717) 299-8091

1   safe manner.
2       Q.   And when you say not failing in a safe manner,
3   that is that any -- any changes to the sensors and/or
4   logic contributed or caused it to fail in an unsafe
5   manner?
6            MR. WALL:  Object to the form of the question.
7   BY MR. ROZELSKY:
8       Q.   Is that your opinion?
9       A.   And the sensors you're referring to are those
10  for sensing the fuselage?
11      Q.   Yes.
12      A.   And whether they -- help me again with the way
13  you phrased that?
14      Q.   Well, we've talked about the removal of the
15  sensors.
16      A.   Yes.
17      Q.   Correct?
18      A.   Yes.
19      Q.   And I believe you indicated that you -- once the
20  decision was made to remove the sensors, SAR, as the
21  re-manufacturer at that time, you believe had a duty and
22  obligation to warn Boeing, or at least inform Boeing of
23  the potential safety ramifications of removal of the
24  sensors?
25           MR. WALL:  Object to the form of question.

JOYCE A. WISE, RMR, (717) 299-8091