IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Lisa J. Priester, Individually, and as Personal Representative of the Estate of David A. Priester, Jr., <br><br> Plaintiff, <br><br> vs. <br><br> Futuramic Tool & Engineering Company; Capital Welding, Inc.; Intec Automated Controls, Inc.; and SAR Automation, L.P., <br><br> Defendants. | ) <br> ) C/A No. 2:14-cv-01108-DCN <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **Plaintiff's Memorandum in Opposition** <br> ) **To Defendant SAR Automation, L.P.'s** <br> ) **Motion To Exclude Plaintiff's Expert** <br> ) **Daryl L. Ebersole, P.E.** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Plaintiff, Lisa J. Priester ("Mrs. Priester"), Individually, and as Personal Representative of the Estate of David A. Priester, Jr. ("Mr. Priester"), by and through the undersigned counsel, respectfully offers this Memorandum in Opposition to the Motion to Exclude Plaintiff's Expert Daryl L. Ebersole, P.E. ("Mr. Ebersole") submitted by Defendant SAR Automation, L.P. (hereinafter "SAR" or "Defendant").[1]

I.  **INTRODUCTION**

This litigation arises out of a fatal incident which claimed the life of Mr. Priester on March 18, 2013, while he was working at the Boeing facility in North Charleston ("the Incident"). On the night of the Incident, Mr. Priester was working on an elevated work platform (hereinafter "Cell 90") while helping assemble the barrel section of an airplane fuselage. *See e.g.* Ex. 1, Mr. Ebersole's Rep., at 1. While in the process of working on Cell 90, Mr. Priester encountered an

---

[1] *See* SAR's Mot. and Mem., Dkt. No. 89.

unguarded floor opening on Cell 90's elevated deck and fell to the floor below. As a result of injuries sustained during the Incident, Mr. Priester passed away on March 29, 2013.

Mrs. Priester has brought suit against several Defendants, including SAR, alleging strict products liability and negligence claims, as well as a claim for loss of consortium. *See* Dkt. No. 48, Pl.'s Am. Compl.[2] SAR has now moved to "exclude the testimony of Mr. Ebersole," in its entirety, asserting that it "lacks the appropriate basis on scientific and technical knowledge and is not reliable." *See* SAR's Mot. and Mem., Dkt. No. 89, at 1. SAR's motion misconstrues Mr. Ebersole's findings, is conclusory, and fails to provide any principled justification for excluding his testimony at trial. Consequently, the Plaintiff respectfully submits that SAR's motion should be denied.

## II.     LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence provides the general framework for the admission of expert testimony, noting:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*See* Fed. R. Evid. 702.

As noted in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the district court must act as a gatekeeper to ensure that an expert is not only qualified to offer opinion testimony but also that such testimony is the result of reliable methodology. Furthermore, Rule

---

[2] Mrs. Priester has also brought suit against Futuramic Tool & Engineering Company ("Futuramic"), Capital Welding, Inc. ("Capital"), and Intec Automated Controls, Inc. ("Intec").

702 requires only that the expert's opinion be the product of reliable principles and methods: proponents of expert testimony "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable .... The evidentiary requirement of reliability is lower than the merits standard of correctness." *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994); *see also Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir.1998); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th. Cir.1999). Indeed, when assessing reliability, "the court's evaluation is always a flexible one, and the court's conclusions necessarily amount to an exercise of broad discretion guided by the overarching criteria of relevance and reliability." *Oglesby v. General Motors Corp.*, 190 F.3d 244, 249-50 (4th Cir. 1999).

Furthermore, under *Daubert,* "[t]he Court's role as a gatekeeper, however, does not replace the traditional adversary system and the place of the jury within the system." *Schrom v. Budget Rent-A-Car Sys., Inc.*, No. CIV.A.6:04-21788-HFF, 2005 WL 3058454, at *2 (D.S.C. Nov. 14, 2005) (attached hereto as Ex. 2) (*citing Daubert,* 509 U.S. at 596). Rather, "[a]s with all other admissible evidence, expert testimony is subject to being tested by 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id.* at *2. Consequently, "the *Daubert* inquiry does not require consideration of whether the proffered testimony is correct or whether the proffered evidence is sufficient to allow a verdict in favor of the proponent. Instead, the focus must be on whether the testimony is reliable and can aid the ultimate trier of fact." *Id.* at *2.

Moreover, challenges to "the methodology of an expert are usually adequately addressed by cross-examination." *See Bado-Santana v. Ford Motor Co.*, 482 F.Supp.2d 192, 196-97 (D.P.R.

2007). Indeed, "rejection of expert testimony, however, is still the exception rather than the rule," Fed.R.Evid. 702 advisory committee's note (2000 Amendments).

## III.   ARGUMENT

While SAR has expressly conceded that Mr. Ebersole is qualified to offer the opinions set forth in his Rule 26 and deposition testimony,[3] it has nevertheless moved to excluded Mr. Ebersole from testifying at trial. The primary grounds for this motion is SAR's unilateral determination that Mr. Ebersole, based on his review and analysis of "ANSI standard 92.6," is somehow "making inadmissible legal conclusions…." *See* SAR's Mot. and Mem., Dkt. No. 89, at 1; 3. Building upon this initial incorrect finding, SAR then additionally posits that Mr. Ebersole's testimony is impermissible as he is "making conclusions of fact" and because his findings are "based on errors of application of the standards." *Id.* at 3-4. However, SAR's position is untenable, as Mr. Ebersole's findings are neither improper factual or legal conclusions; rather, the challenged opinions are merely specialized findings made by Mr. Ebersole upon reviewing of SAR's actions and inactions under ANSI/SIA A92.6, an applicable industry standard for work platforms with which Boeing required Cell 90 to comply.[4] SAR's vague, incoherent arguments provide no valid basis for excluding or limiting Mr. Ebersole's testimony and as such its motion should be denied.

### A. Mr. Ebersole's Challenged Findings Are Not Inadmissible Legal Conclusions.

SAR initially cites to two pages of Mr. Ebersole's thirty-five page Rule 26 Report, asserting that Mr. Ebersole has stated "that SAR is a remanufacturer due to ANSI standard 92.6-2006." *See*

---

[3] *See* SAR's Mot. and Mem., Dkt. No. 89, at 3 (*noting* that "**Mr. Ebersole is likely a qualified witness with the requisite credentials to satisfy the first prong of [sic] analysis**" under *Daubert*).

[4] *See* Ex. 3, PME 473Z5000-7 Specifications, Bates No. Boeing 000105 *et seq*, at § 3.5.5.1. (Noting that the "Safety and Design Factors" for Cell 90 included a requirement that "The PME is to be designed to a safety factor of 2̶ 4 based on the ultimate strength of the PME construction material (ref. ANSI/SIA A.92.6-2006 Section for Self-Propelled Elevating Work Platforms") (mark-up in original).

4

SAR's Mot. and Mem., Dkt. No. 89, at 3 (*citing* Ex. 1 Mr. Ebersole's Rep. at 30, 35).[5] SAR then makes reference to six lines of testimony given by Mr. Ebersole in response to questioning by counsel from Futuramic (questions which were specifically objected to *by SAR's counsel*) *Id.* (*citing* Mr. Ebersole Dep., at 73:19-74:10 (attached hereto as Ex. 4)).[6] Based on that testimony, SAR asserts that Mr. Ebersole has thus opined that it "has a duty to Boeing and to Mr. Priester because of this [remanufacturer] label," and further that Mr. Ebersole has implied "that SAR has breached that duty," both which SAR claims are violative of Rule 702. *Id.*

Despite SAR's assertions, Mr. Ebersole's determination that SAR was a "remanufacturer" is based on technical details ANSI/SIA A.92.6-2006, as juxtaposed against SAR's actions and

---

[5] Of note, SAR does not bother to quote any portion of Mr. Ebersole's Report or his deposition. Plaintiff presumes that SAR is contesting the admissibility of Finding No. 9 set forth on page 35 of Mr. Ebersole's Report; nevertheless, SAR has provided absolutely no basis for excluding any of the other conclusions set forth in Mr. Ebersole's report or deposition.

[6] The entire exchange cited by SAR is as follows:

> Q. And I believe you indicated that you -- once the decision was made to remove the sensors, SAR, as the re-manufacturer at that time, you believe had a duty and obligation to warn Boeing, or at least inform Boeing of the potential safety ramifications of removal of the sensors?
>
> MR. WALL: Object to the form of question.
>
> THE WITNESS: That's correct.
>
> BY MR. ROZELSKY:
>
> Q. And, in fact, to your knowledge, SAR did not --or breached that standard of care?
>
> MR. WALL: Object to the form of the question.
>
> THE WITNESS: Well, SAR did not act to prevent this from causing a potentially hazardous situation. What I've not identified is that those were part of what led to the failure of Slider Number 2 to extend at the time of the incident.

*See* Ex. 4, Ebersole Dep., at 73:19-74:10.

5

inactions with respect to Cell 90.[7] Some background on the sequence of events that led to SAR's involvement is necessary to put Mr. Ebersole's findings into proper context.

For example, when Boeing first proposed that Futuramic build Cell 90, it provided a specification to Futuramic that included requirements for adherence to … to ANSI A.92.6, dealing with "Self Propelled Elevating Work Platforms." *See* Ex. 1, Mr. Ebersole's Rep. at 24; *see also* Ex. 3, PME 473Z5000-7 Specifications, Bates No. Boeing 000105 *et seq*, at § 3.5.5.1. Futuramic, per its agreement with Boeing, in turn retained Intec to prepare "the programming for the controllers, drives and touch screen" on Cell 90. *See* Ex. 1, Mr. Ebersole's Rep. at 3-4. Before delivery to Boeing, Intec conducted some preliminary testing on Cell 90's software and "anticipated eventually finishing the software during commissioning at the Boeing facility," which "is the customary practice." *Id.* at 4.

Before Cell 90 was shipped to Boeing, Boeing issued a Statement of Work ("SOW") for the addition of a redundant brake system for Cell 90. *See* Ex.5, Scott Motz (Boeing) Dep. at 87:25-89:16; *see also* Ex. 6, 10/2/2012 Mem. from Walt Converse to Stacy Lovett and Scott Motz. Boeing "provided [Futuramic] a request for quote" on this additional work. *See* Ex. 5, Motz Dep. at 89:17-20.[8] However, Futuramic indicated that performing that work would alter the "production rate schedule" for Cell 90. *See* Ex. 7, Dep. of Walter Converse (Boeing), at 89:19-90:8. As a result, on or about October 8, 2012, SAR was provided a statement of work by Boeing for the additional

---

[7] SAR's arguments on this point are logically incoherent. For example, SAR deems Mr. Ebersole's finding, pursuant ANSI A.92.6, that SAR is a remanufacturer to be offensive because in its view Mr. Ebersole is "stating that it is a fact that SAR is a remanufacturer, rather than providing an opinion.

[8] *See also id.* at 179:23-180:7 (where Mr. Motz of Boeing noted "I know we talked at Futuramic about the upcoming addition of redundant brakes and the fact that we did put Futuramic on contract to … provide their side of the interface on that.").

work Futuramic would or could not perform. *See* Ex. 8, 10/8/2012 email from Walt Converse to Michael Ellison *and see* Ex. 9 Statement of Work (SOW).

Subsequently, on October 19, 2012, SAR contacted Boeing and provided the requested quote pursuant to the SOW. *See* Ex. 10, SAR Quotation. Based on these exchanges, SAR agreed that its work on Cell 90 would include, *inter alia,* "design work up to the interface terminal strip," the provision of "General Logic for slider operation" and of an "Alarm horn with selectable tone," as well "commissioning, testing and training" on to Cell 90. *Id.* Moreover, SAR also agreed that its "Scope of Work" included working "with [the] platform general supplier in order to implement logic for slider operation." *Id.*

As noted by Mr. Ebersole, while Intec "emailed the program that they had used at the preliminary testing to SAR," subsequently "no further requests were made by SAR for assistance in understanding, modifying or completing the controller logic" within Cell 90. *See* Ex. 1, Mr. Ebersole's Rep., at 4. Rather, during the commissioning process, SAR "modified the programs of the controller and the touch screen." *Id.* Moreover, "[d]uring commissioning of the system, SAR did not complete the logic that had been prepared for communication verification." *Id.* at 26. It is in light of these activities undertaken by SAR during the commissioning process that had led to Mr. Ebersole's opinions which SAR now contends are impermissible legal conclusions.

Mr. Ebersole has noted that the factual record demonstrates that "[d]uring the final installation SAR defeated barrel proximity sensors and enabled additional manual control without consulting with the original programmer. From this point on SAR assumed the responsibility of commissioning the system." *See* Ex. 1, Mr. Ebersole's Rep., at 30. This determination is not an impermissible legal conclusion, but rather the result of Mr. Ebersole's comparison of SAR's activities to the specifications in ANSI/SIA 92.6-2006. The definition section of ANSI/SIA 92.6-

7

2006, the very standard Boeing with which Boeing required compliance, identifies the meaning of "Remanufacture" and "Modification" from a technical perspective. *See* Ex. 1, Mr. Ebersole's Rep., at 30.[9] Likewise, Mr. Ebersole noted in his Rule 26 Report that §4.22 of ANSI/SIA 92.6-2006, entitled "Remanufacture," specifies that "[w]henever an aerial platform is remanufactured by an entity other than the original manufacturer, the remanufacturer shall assume the responsibilities of a manufacturer as set forth in section 4 of this Standard." *Id.*

SAR has taken issue with the finding made by Mr. Ebersole that its actions and inactions in commissioning Cell 90 rendered it a remanufacturer under ANSI/SIA 92.6-2006, which in turn implicates a number of safety requirements that the industry standards mandate for manufacturers. *See* Ex. 1, Ebersole Rep. at 24 (discussing ANSI/SIA 92.6-2006 §§1.1.1.; 4.1). However, Mr. Ebersole's conclusions are not improper or beyond the proper scope of expert testimony. For example, while "[t]he line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern," the Fourth Circuit has noted that "[w]e identify improper legal conclusions by determining whether 'the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.'" *See United States v. McIver*, 470 F.3d 550, 561–62 (4th Cir. 2006). Under that rationale, "courts have held inadmissible testimony that a defendant's actions constituted 'extortion,' that a dog bite constituted 'deadly force,' that defendants held a 'fiduciary' relationship to plaintiffs, and that a product was 'unreasonably dangerous.'" *Id.* (internal citations omitted).

---

[9] (*citing* ANSI/SIA 92.6-2006, § 3 and specifying that under the standard "Remanufacture" is the "[t]he modification of an aerial platform, either by the original manufacturer or another qualified entity, so that the aerial platform will comply with the ANSI Standard in effect on the date the modification is completed," while "Modification, modified" is defined as "To make a change(s) to an aerial platform that affects the operation, stability, safety factors, rated load or safety of the aerial platform in any way.")

SAR has failed to identify any specialized legal meaning of the term "remanufacturer" that would even begin to suggest that Mr. Ebersole's findings, predicated on his application of the facts of this matter to the applicable ANSI standard, are inadmissible.

Moreover, "Rule 704(a) allows the admission of expert testimony that 'embraces an ultimate issue to be decided by the trier of fact.'" *McIver*, 470 F.3d at 561–62 (*citing* Fed.R.Evid. 704(a)). In addition, even if Mr. Ebersole's challenged findings about SAR were somehow construed to be legal conclusions, which they are not, "in certain circumstances, such as cases involving specialized industries, 'opinion testimony that arguably states a legal conclusion is helpful to the jury, and thus, admissible.'" *Id.* (*citing United States v. Barile,* 286 F.3d 749, 760 n.7 (4th Cir.2002) (*quoting* Weinstein's Federal Evidence § 704.04[2][a] (2d ed.2001)). Put simply, SAR's arguments that Mr. Ebersole's findings incorrectly and impermissibly set forth legal conclusions are without merit and should be rejected.

### B. Mr. Ebersole Has Not Made Improper Conclusions of Fact

SAR next asserts, without any precedential support (save for a non-specific reference to "the Federal Rules of Evidence") that "Mr. Ebersole is making conclusions of fact, which is charged to the jury, rather than providing his opinion." *See* SAR's Mot. and Mem., Dkt. No. 89, at 3. In particular, SAR asserts that "[b]y stating it is a fact that SAR is a remanufacturer, rather than providing an opinion on the standards applicable to the facts of the case, Mr. Ebersole draws a conclusion that is for the jury to decide…." *Id.* As with its criticisms of Mr. Ebersole's putative legal conclusions, SAR's arguments on the impermissibility of Mr. Ebersole's 'factual' findings are unpersuasive.

First, Mr. Ebersole's conclusion that SAR's actions with respect to Cell 90 rendered it a remanufacturer pursuant to ANSI/SIA 92.6-2006 is, in fact, a textbook example of "providing an opinion on the standards applicable to the facts of the case." In his Rule 26 Report, Mr. Ebersole

identified how, and why, a number of industry standards, including but not limited to ANSI/SIA 92.6-2006, were applicable to Cell 90 and the work done on it by Futuramic, SAR and others. *See* Ex. 1, Ebersole Rep., at 24-25; 29-30; 35. Mr. Ebersole clearly identified that "the design that was not completed during the commissioning failed to verify the successful communications and failed to verify successful positioning of the sliders," which he has opined was failure to meet the requirements of ANSI/SIA 92.6-2006. *Id.* at 29. Mr. Ebersole also clearly denoted that SAR's actions, including defeating "barrel proximity sensors," and enabling "additional manual control without consulting the original programmers," were modifications to Cell 90 which, under ANSI/SIA 92.6-2006, are sufficient to implicate the requirements set forth in § 4.22, governing "Remanufacture." *Id.* at 30. SAR has failed to provide any convincing basis for claiming that Mr. Ebersole's opinions on this "remanufacture" impermissibly invade the province of the jury. In point of fact, Mr. Ebersole's analysis achieves the very outcome which SAR has deemed, incorrectly, to be lacking by applying relevant standards to the facts of this case. As a result, SAR's criticism that Mr. Ebersole's findings on "remanufacture" are impermissible statements of fact is specious and should be rejected.

### C. Mr. Ebersole's Challenged Findings Are Not The Result of Misapplication of Relevant Standards

SAR's final criticism of Mr. Ebersole's findings posits his "conclusions and opinions are based on errors of application the standards, and as such as unreliable."  *See* SAR's Mot. and Mem., Dkt. No. 89, at 3.  In particular, SAR asserts that "Mr. Ebersole uses ANSI standard 92.6-2006 as applicable to the work SAR did because it was included in the specifications originally delivered to Defendant Futuramic…." *Id.* However, SAR proclaims that Mr. Ebersole's reference to that standard is "unreliable" because "[b]oth Futuramic's and SAR's experts" disagree with his findings. *Id.* SAR cites no case law in support of this bald assertion, and with good reason. SAR

10

has not, and cannot, cite *any* authority requiring unanimity of opinion amongst the expert witnesses, retained by adversarial parties in litigation, as a precondition to the admissibility of such an expert's testimony. *See Hickerson v. Yamaha Motor Corp.,* No. 8:13-CV-02311-JMC, 2016 WL 4055025, at *5 (D.S.C. July 29, 2016) (attached as Ex. 11) (*citing Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 704 (W.D.N.C. 2003) (noting that *Daubert* neither eliminates nor prohibits a "battle of the experts" and that the defendant's expert's opinion "is not unreliable merely because he has a different opinion than that of [the p]laintiff's expert"). That SAR's expert (or Futuramic's expert) disagrees with Mr. Ebersole's conclusions, in and of itself, means nothing. SAR's arguments simply provide no valid basis for this Court to accede to its drastic request to exclude the entirety of Mr. Ebersole's testimony.

Furthermore, while SAR has failed to provide *any* legitimate basis for calling into question the reliability of Mr. Ebersole's application of relevant standards to the facts of this case, it bears mentioning that Mr. Ebersole fully identified how and why he has opined that ANSI A.92.6-2006 is applicable here. *See e.g.* Ex. 1, Ebersole Rep. at 24-35 (*citing, inter alia*, ANSI/SIA A.926-2006 Propelled Elevating Work Platforms at §§1.1.-1.1.1 and noting that the standard "applies to self-propelled integral chassis aerial platforms having a platform that cannot be positioned completely beyond the base and are used to position personnel, along with their necessary tools and materials, at work location…."). *See also* Ex. 3, PME 473Z5000-7 Specifications, Bates No. Boeing 000105 *et seq*, at § 3.5.5.1.[10] Put simply, SAR's argument --- that Mr. Ebersole's opinions are unreliable because he makes reference to standards *specified by Boeing* and which are common in the industry

---

[10] Of note, Ex. 3 identifies various requirements which were redacted during the development of Cell 90, including a number of requirements related to the capability of Cell 90 to change its elevation. *See* Ex. 3 at §§ 2; 3.4.3. Nonetheless, at no time were the explicit requirements set forth regarding compliance with ANSI/SIA A.92.6-2006 deleted or removed from Boeing's specifications. *Id.* at § 3.5.5.1

---- fails to make a case for excluding *any* portion of Mr. Ebersole's testimony, let alone the entirety of his findings.

## IV.  CONCLUSION

SAR's motion is conclusory, bereft of citation to Mr. Ebersole's testimony or to his Rule 26 Report and utterly lacking in any cogent support for the relief requested therein. As such, Plaintiff respectfully requests that this Court deny SAR's motion.

Respectfully submitted, this the 21st day of October, 2016,

                    **MOTLEY RICE LLC**

By:    s/ Kevin R. Dean
        Kevin R. Dean
        *Federal Bar No.:  8046*
        Anne McGinness Kearse
        *Federal Bar No.: 7570*
        W. Christopher Swett
        *Federal Bar No.: 11177*
        Motley Rice LLC
        28 Bridgeside Blvd.
        Mount Pleasant, SC  29464
        (843) 216-9000 |(843) 216-9440 (Facsimile)
        kdean@motleyrice.com
        akearse@motleyrice.com
        wswett@motleyrice.com