**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| LISA J. PRIESTER, individually, and as Personal Representative of the Estate of David A. Priester, Jr., | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:14-cv-01108-DCN |
| vs. | ) ) | **ORDER** |
| FUTURAMIC TOOL & ENGINEERING COMPANY; CAPITAL WELDING, INC.; MCMASTER-CARR SUPPLY COMPANY; INTEC AUTOMATED CONTROLS, INC.; and SAR AUTOMATION, L.P., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter comes before the court on defendants Futuramic Tool & Engineering Company and Capital Welding Inc.'s (collectively, "Futuramic")[1] Motion to Strike or Exclude the Affidavits of Priester's Experts Daryl Ebersole ("Ebersole") and Bartley Eckhardt ("Eckhardt"), ECF No. 87, and defendant SAR Automation, L.P.'s ("SAR") Motion to Exclude Ebersole, ECF No. 89. For the reasons set forth below, the court grants Futuramic's Motion to Strike or Exclude the Affidavits of Ebersole and Eckhardt and denies SAR's Motion to Exclude Ebersole.

## I.  BACKGROUND

This litigation arises out of a fatal accident at the Boeing manufacturing facility in North Charleston, South Carolina. ECF No. 75 at 1. On March 18, 2013, the decedent,

---

[1]   Since Futuramic and Capital Welding's interests are aligned for the purposes of this motion, the court refers to them collectively as "Futuramic."

1

David Priester ("Mr. Priester")[2] was working on an elevated work platform ("Cell 90") when he fell through an opening eighteen feet above the concrete floor. Id. Cell 90 was designed with eighteen movable sliders which extend at varying lengths to conform to the curving nature of the body of the aircraft barrel. Id. at 4–5. The design of Cell 90 called for the sliders to be no more than three inches from the aircraft barrel. Id. At the time of the incident, Mr. Priester and four other Boeing employees were working on Cell 90, and following the last shift break attempted to extend the sliders to continue working on the aircraft. However, Slider #2 did not extend the entire length to the aircraft barrel, leading to a gap between the end of Slider #2 and the barrel of the aircraft. ECF No. 88 at 3. Mr. Priester and the other Boeing employees continued to work on the platform, and after working for approximately one hour on Cell 90, Mr. Priester fell through the gap between Slider #2 and the aircraft barrel. ECF No. 88 at 4. Mr. Priester later died as a result of the injuries sustained from the fall. ECF No. 75 at 1. Priester is the widow of Mr. Priester and the personal representative of his estate. Id.

Priester filed the present suit on March 24, 2014 against Futuramic, Capital Welding, McMaster-Carr Supply Company, and Intec Automated Controls, Inc. She asserts strict liability claims against Futuramic, Capital, and McMaster-Carr, and causes of action for negligence, loss of consortium and punitive damages against all defendants.[3]

---

[2] For clarity, the court refers to Lisa Priester, who is the plaintiff in this case, as "Priester" and decedent David Priester as "Mr. Priester."

[3] Futuramic is the manufacturer of Cell 90. ECF No. 75 at 1. Capital Welding performed the fabrication work for Cell 90 and installed it at the Boeing facility. Id. Intec installed the electronics and provided the programming for Cell 90. Id. SAR performed modifications to Cell 90 after it was delivered and installed in the Boeing facility, including modifications to Intec's programming. Id.

ECF No. 88 at 2. On September 17, 2014, Priester amended her complaint to add SAR as a defendant. ECF No. 88 at 2.

Priester identified a number of experts to testify in the case. The two motions before the court concern two of those experts, Daryl L. Ebersole ("Ebersole") and Bartley J. Eckhardt, P.E. ("Eckhardt"). Futuramic filed a motion to strike or exclude on September 6, 2016, arguing that the affidavits of Eckhardt (ECF No. 82, Ex. 4) and Ebersole (ECF No. 82, Ex. 5) should be excluded because they constitute improper supplementation under Federal Rule of Civil Procedure 26 and therefore are untimely. ECF No. 87. Priester responded on September 23, 2016, ECF No. 94, and Futuramic replied on September 30, 2016, ECF No. 95. SAR filed a motion to exclude on September 13, 2016, arguing that Ebersole's testimony should be excluded under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). ECF No. 89. Priester filed a response on October 21, 2016, ECF No. 100, to which SAR replied on November 4, 2016, ECF No. 101. Both motions have been fully briefed and are now ripe for the court's review.

## II. STANDARD

### A. Federal Rule of Evidence 702

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts serve as gatekeepers for expert testimony. The court has a "special obligation" to ensure that expert testimony is relevant and reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).

Under Daubert, the court must address two questions: first, whether the expert's testimony is based on "scientific knowledge"; and second, whether the testimony "will assist the trier of fact to understand or determine a fact in issue." 509 U.S. at 592. The first question is answered by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." Id. at 592–93. Several nondispositive factors should be considered in determining the reliability of a particular scientific theory or technique: whether it (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error; and (4) has attained general acceptance in the pertinent scientific community. See id. at 593–94. In considering these factors, the focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. The factors are not exclusive; what factors are relevant to the analysis "depends upon the particular circumstances of the particular case at issue." Kumho Tire, 526 U.S. at 150.

The second inquiry "goes primarily to relevance." Daubert, 509 U.S. at 591. Relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. Id. at 593. "A review of the caselaw after Daubert shows that the rejection of expert testimony is the

exception rather than the rule." Fed. R. Evid. 702, Advisory Committee's Note to 2000 Amendments. "Daubert did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" Id. (quoting United States v. 14.38 Acres of Land Situated in Leflore Cnty., 80 F.3d 1074, 1078 (5th Cir.1996)).

### B. Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 26(a)(2)(A) requires litigants to disclose "the identity of any witness [they] may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed.R.Civ.P. 26. Rule 26(a)(2)(B) further requires litigants to produce written reports for any witness who is "retained or specially employed to provide expert testimony in the case" or "whose duties as the party's employee regularly involve giving expert testimony." Those reports must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Rule 37(c) (1) "gives teeth" to the Rule 26(a)(2) requirements by "forbidding a party's use of improperly disclosed information at a trial, at a hearing, or on a motion, unless the party's failure to disclose is substantially justified or harmless." Tokai Corp. v. Easton Enterprises, 632 F.3d 1358, 1365 (Fed. Cir. 2011).

Under Rule 26(e), with respect to expert reports, a party's duty to supplement extends both to information included in the report and to information given during the

5

expert's deposition.  Fed. R. Civ. P. 26(e).  Rule 26(e) permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report.  Keener v. United States, 181 F.R.D. 639, 640 (D. Mont. 1998); Coles v. Perry, 217 F.R.D. 1, 3 (D.D.C. 2003) ("Fed. R. Civ. P. 26(e) does not grant a license to supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect.").

### III.   DISCUSSION

#### A.     SAR's Motion to Exclude Ebersole

SAR moves to exclude Ebersole's testimony under Rule 702 and Daubert, arguing that Ebersole's testimony lacks the appropriate basis in scientific and technical knowledge and is not reliable.  ECF No. 89 at 1.  SAR's arguments fall in to the following categories: (1) Ebersole offers inadmissible legal conclusions, which are outside the scope of his allowable testimony as an expert witness; (2) Ebersole offers conclusions of fact rather than providing his opinions; and (3) Ebersole's opinions are unreliable because are based on errors of application.[4]  ECF No. 89 at 3.  All of these arguments center on Ebersole's testimony that SAR's modifications to Cell 90 made it a remanufacturer pursuant to American National Standards Institute ("ANSI") standard 92.6, an industry standard for work platforms that Boeing allegedly required Cell 90 to

---

[4]    SAR concedes that Ebersole "is likely a qualified witness" with the requisite general credentials to satisfy the first prong of the Daubert analysis, so the court moves on the relevance prong of Daubert to determine whether Ebersole's testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute.  Daubert, 509 U.S. at 593.

comply with, thereby subjecting SAR to "the responsibilities of a manufacturer as set forth in section 4 of the [ANSI standard]." ECF No. 99, Ex. 1, Ebersole Report, p. 30.

### 1. Inadmissible Legal Conclusions

SAR first contends that Ebersole's testimony should be excluded because he makes "inadmissible legal conclusions." ECF No. 89 at 3. Specifically, SAR argues that Ebersole's testimony on duty and breach are legal conclusions outside the scope of Ebersole's testimony as an expert witness. ECF No. 89 at 3.

In United States v. McIver, 470 F.3d 550, 561–62 (4th Cir. 2006), the Fourth Circuit noted that while "[t]he line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern," the court identifies improper legal conclusions by determining whether "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." SAR relies solely on Adalman v. Baker, Watts & Co., 807 F.2d 359 (4th Cir. 1986), abrogated on other grounds by Pinter v. Dahl, 486 U.S. 622 (1988), to support its argument that Ebersole's testimony should be excluded. In Adalman, the expert witness testified about the meaning of legal terms, including the difference between a contract and an option. Id. at 368. In excluding the expert, the Adalman court found it persuasive that "[f]rom beginning to end" the appellant proffered the expert witness to testify "in substantial part" as to the applicability of the securities law, and in the process, "giv[e] his expert opinion on the governing law." Id. While the expert in Adalman offered opinions such as "legally the offering is made through the offering memorandum," Adalman, 807 F.2d at 366, after a close reading of the disputed testimony the court is unconvinced that Ebersole's opinions touch on SAR's duty or breach of that

duty at all. Instead, when asked if SAR had an "obligation to warn Boeing, or at least inform Boeing[,] of the potential safety ramifications of removal of the sensors," Ebersole replied "that's correct." ECF No. 89, Ex. 2, Ebersole Dep. p. 3. In opining upon SAR's obligation to warn Boeing, Ebersole may have been speaking in terms of SAR's duty generally but the court finds that he was not offering an opinion as to SAR's legal duty—in other words, although Ebersole used terms similar to that which courts have employed to express the underlying issue of negligence, none is sufficiently specialized to render his testimony inadmissible.

A review of cases where courts found that the expert impermissibly opined on ultimate issues of law is instructive. In Hermitage Indus. v. Schwerman Trucking Co., 814 F. Supp. 484 (D.S.C. 1993), the court excluded expert testimony that an owner of a chemical facility was "negligent" and that the owner's conduct was the "direct, proximate, and efficient cause" of a chemical explosion. Other courts have held inadmissible expert testimony that a defendant's actions constituted "extortion," DiBella v. Hopkins, 403 F.3d 102, 121 (2d Cir. 2005); that defendants owed a "fiduciary" relationship to plaintiffs, Christiansen v. Nat'l Sav. & Trust Co., 683 F.2d 520, 529 (D.C. Cir. 1982); and that a product was "unreasonably dangerous," Strong v. E.I. DuPont de Nemours Co., 667 F.2d 682, 685–86 (8th Cir. 1981). In contrast, here Ebersole replied only that SAR "did not act to prevent this from causing a potentially hazardous situation" when asked if SAR breached a standard of care. Ebersole Dep. at p. 4. The court finds that Ebersole does not offer a legal conclusion but instead expresses an opinion on SAR's actions and inactions during the commissioning of Cell 90.

    2.    **Conclusions of fact**

Next, SAR argues that by opining that SAR is a remanufacturer under ANSI Standard ANSI 92.6-2006, Ebersole draws a conclusion of fact that is for the jury to decide instead of "providing an opinion on the standards applicable to the facts of the case." ECF No. 89 at 3.[5] Rule 704 states that an expert's opinion is not objectionable "just because it embraces an ultimate issue." Fed. R. Evid. 704. In other words, questions of fact that are committed to resolution by the jury "are the proper subject" of opinion testimony. McIver, 470 F.3d at 561. Accordingly, the court finds that Ebersole's opinion that SAR's modifications to Cell 90 make it a remanufacturer under the ANSI standards is an opinion on the standards applicable to the facts of the case, and is admissible. In his Rule 26 report, Ebersole clearly identifies what industry standards were applicable to Cell 90. ECF No. 100, Ex. 1, Ebersole Report at 30 ("Whenever an aerial platform is remanufactured by an entity other than the original manufacturer, the remanufacturer shall assume the responsibilities of a manufacturer."). Ebersole opines that SAR modified Cell 90 by enabling "additional manual controls" and "defeating" the logic sensors, and that these actions make SAR a remanufacturer under the standard. While the question of whether SAR's commissioning of Cell 90 makes it a

---

[5]     SAR also contends that Ebersole's opinion that SAR is a remanufacturer is predicated on an inaccurate reading of the standard. ECF No. 89 at 4. In support, SAR points to the testimony of Futuramic and SAR's expert Paul Turner, who states that SAR did not meet the definition of remanufacturer. ECF No. 89, Ex. 4, Turner Dep. at p. 6 ("[P]er the definition and the standard of remanufacture, SAR did not meet that definition."). If, as SAR argues, by stating that SAR is a remanufacturer Ebersole makes an impermissible conclusion of fact then surely by stating that SAR is not a remanufacturer SAR's own expert Turner runs into this same problem. The court observes that "what's good for the goose is good for the gander," but since there are alternate grounds for rejecting SAR's motion, the court will not make a finding on this.

"remanufacturer" under ANSI 92.6-2006 is certainly one for the jury, under McIver it is acceptable for Ebersole to testify on it as well.

### 3.     Errors of Application

SAR's final argument is that Ebersole's conclusions are based on an erroneous application of the ANSI standards, and are therefore unreliable. ECF No. 89 at 3. SAR asserts that while Ebersole uses ANSI 92.6-2006 as the applicable standard for SAR's work, this standard is "unreliable" because "[b]oth Futuramic's and SAR's experts disagree" that this standard should apply. Id. This reasonable difference of opinion between Ebersole and Futuramic and SAR's experts does not make the challenged representation—that ANSI 92.6-2006 is the applicable standard—literally false. See, e.g., Smith v. Wyeth-Ayerst Labs. Co., 278 F. Supp. 2d 684, 710 (W.D.N.C. 2003) ("Daubert and its progeny does not eliminate the need for, or otherwise prohibit, a 'battle of the experts' as long as each of the expert's reasoning and methodology is sound."); Allapattah Servs., Inc. v. Exxon Corp., 61 F. Supp. 2d 1335, 1341 (S.D. Fla. 1999) ("Merely because two qualified experts reach directly opposite conclusions . . . does not necessarily mean that, under Daubert, one opinion is per se unreliable."), aff'd, 333 F.3d 1248 (11th Cir. 2003), aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005). The court's gatekeeping role is not meant to displace "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" as "the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596; see also Electro-Mech. Corp. v. Power Distribution Prod., Inc., 926 F. Supp. 2d 822, 838 (W.D. Va. 2013) (recognizing that a party's

"disagree[ments] with the substance of [an] expert's opinions . . . are best addressed on cross-examination.").

SAR introduces a new argument in the reply, that Ebersole's testimony on SAR's liability is based on his application of ANSI 92.6-2006, which was "never incorporated in the work SAR was contracted by Boeing to perform," "[t[here was no communication between SAR and Boeing which referenced ANSI 92.6," and that "[n]either the statement of work, nor the bid that SAR presented to Boeing . . . incorporated ANSI 92.6 standards." ECF No. 101 at 2. To the extent that SAR is using this Daubert motion to contest Ebersole's identification of ANSI 92.6-2006 as the applicable standard altogether, that argument is better suited to a motion for summary judgment or for trial. The court's gatekeeping function under Daubert is limited to determining if Ebersole's challenged testimony is based on unreliable data or methodology. See i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 852 (Fed. Cir. 2010) ("When [an expert's] methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility."), aff'd, 564 U.S. 91 (2011). The court is satisfied that in his Rule 26 report, Ebersole adequately identifies his methodology for opining that ANSI 92.6-2006 is the applicable standard. See Ebersole Report at 24–35.

The court finds that Ebersole properly offered inferences drawn from facts as opposed to impermissible legal conclusions, that he did not make improper conclusions of fact, and that his application of relevant standards to the facts of the case is reliable. Therefore, the court denies SAR's motion to exclude Ebersole.

### B.     Futuramic and Capital Welding's Motion to Strike or Exclude the Affidavits of Eckhardt and Ebersole

Futuramic argues that the affidavits of Ebersole and Eckhardt which were attached as exhibits to Plaintiff's Memorandum in Opposition to Futuramic's Motion for Partial Summary Judgment and Defendant Capital Welding's Motion for Complete Summary Judgment should be struck or excluded because the affidavits are improper supplementation under Rule 26 and are untimely. ECF No. 87 at 2. Priester filed Rule 26(a)(2) disclosures and the Rule 26 expert reports of Ebersole and Eckhardt on December 22, 2015. Id. Ebersole was deposed on February 19, 2016, and Eckhardt was deposed on February 3, 2016. Id. In response to Futuramic and Capital Welding's summary judgment motions, Ebersole and Eckhardt submitted new affidavits eight months after the deadline to submit expert reports and six months after Ebersole and Eckhardt were deposed. Id.

Rule 26(e)(1) requires supplementation when a "party learns that in some material respect the information disclosed is incomplete or incorrect." With respect to expert reports, a party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Fed. R. Civ. P. 26(e). Courts within the Fourth Circuit have held that Rule 26(e) permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report.[6] In <u>Akeva L.L.C. v. Mizuno Corp.</u>, 212 F.R.D.

---

[6] Courts outside of the Fourth Circuit have reached similar conclusions. <u>See</u>, e.g., <u>Coles v. Perry</u>, 217 F.R.D. 1, 3 (D.D.C.2003) ("Fed. R. Civ. P. 26(e) does not grant a license to supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect."); <u>Beller ex rel. Beller v. United</u>

306, 310 (M.D.N.C. 2002), the court reasoned that "to construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert opinion preparation." Similarly, in Palmetto Pharm. LLC v. AstraZeneca Pharm. LP, No. 2:11-cv-00807, 2012 WL 4369259, at *3 (D.S.C. July 18, 2012), the court granted a motion to strike where a supplemental report was "not provided to correct or complete a defective opinion" in the original expert report, but was intended to impeach testimony given by Plaintiff's expert.

Priester does not argue that Ebersole and Eckhardt's initial opinions were somehow incomplete or incorrect, but instead that the new affidavits were offered as Eckhardt and Ebersole's "attempt[t] to address the instances in Defendants' summary judgment memoranda where their respective testimony and opinions had been misconstrued" in an effort to "clarify a number of instances where the Defendants had cited [their] testimony and conclusions in a misleading fashion." ECF No. 94 at 3. However, to accept this expansive interpretation of "supplementation" would lead to the type of impermissible bolstering of expert opinions that was rejected by the Akeva and Palmetto Pharmaceuticals courts. The court refuses to do so.

The Eastern District of North Carolina confronted a similar scenario in Gallagher v. S. Source Packaging, LLC, 568 F. Supp. 2d 624 (E.D.N.C. 2008), where a putative buyer of a liquidation trust for a packaging company filed a supplemental report to

---

States, 221 F.R.D. 696, 701 (D.N.M. 2003) ("[Rule 26(e) ] does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report . . ." (quotation omitted)); Coles v. Perry, 217 F.R.D. 1, 3 (D.D.C. 2003) ("[Rule] 26(e) does not grant a license to supplement a previously filed expert report because a party wants to . . ."); Reid v. Lockheed Martin Aeronautics Co., 205 F.R.D. 655, 662 (N.D. Ga. 2001) ("In short, Rule 26 imposes a duty on Plaintiffs; it grants them no right to produce information in a belated fashion." (emphasis in original)).

address numerous problems in the initial report that the trustee discussed in moving for summary judgment. The Gallagher court rejected proffered expert report as improper supplementation under Rule 26. Id. at 631. Here, both Ebersole and Eckhardt's affidavits begin with the statement "I have prepared this affidavit in response to [Futuramic and Capital Welding's summary judgment motions]." ECF No. 94, Ex. 5, Eckhardt Aff. ¶ 6; ECF No. 94, Ex. 6, Ebersole Aff. ¶ 7. Ebersole opines that Futuramic was a "contributing cause to the fatality" and that the modifications made by SAR to the logic of Cell 90 were foreseeable. Ebersole Aff. ¶¶ 21, 26. This is not a correction of an inadvertent error in his Rule 26 report or an addition of information that was not available to him at the time of his Rule 26 report. It is certainly not a mere "clarification" of prior testimony as Priester argues. ECF No. 94 at 9. Instead, it is an attempt for Ebersole to amend his Rule 26 report. Ebersole may have intended his affidavit to clarify that the finding in his Rule 26 report that "[t]he control system failed to successfully move [Slider #2] to a safe position and this was a cause of Mr. Priester's fatality" implicates Futuramic's actions as a contributing cause because of Futuramic's role in delivering Cell 90 with an incomplete control system. Courts have repeatedly ruled that parties may not avoid summary judgment by "supplementing" an expert report with this type of "new and improved" expert report. See, e.g., MicroStrategy, Inc. v. Business Objects, S.A., 429 F.3d 1344, 1353 (Fed. Cir. 2005); Solaia Tech., LLC v. ArvinMeritor, Inc., 361 F.Supp.2d 797, 806 (N.D. Ill. 2005) ("It would appear that Nuschke's much expanded opinion was prompted solely by ArvinMeritor's summary judgment motion . . . . This is not the proper role for supplementation of a report by an expert."); Beller, 221 F.R.D. at 701 ("To rule otherwise would create a system where preliminary reports could be

followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given."). Given that both Eckhardt and Ebersole's affidavits begin with the explicit statement that the affidavit "was prepared in response" to Futuramic and Capital Welding's summary judgment motion, the court finds that the affidavits were intended to function as exactly the type of "new and improved" expert report that courts have rejected under Rule 26.

Rule 37(c)(1) allows for evidence to be admitted even when the party seeking to offer evidence has failed to properly disclose: (1) when the failure to disclose is "substantial[ly] justif[ied]," and (2) when the nondisclosure is "harmless." See S. States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 595–96 (4th Cir. 2003). In determining whether nondisclosure of evidence is substantially justified or harmless, the court looks to

> "(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony."

Id. (internal citations omitted). Priester contends that "even assuming" Ebersole and Eckhardt's affidavits exceed the scope of their previously disclosed opinions, Futuramic will be able to cure any putative prejudice at trial through cross-examination. ECF No. 94 at 25. However, to find that supplementation is "harmless" under Rule 37(c)(1) because a witness can be cross-examined at trial would undercut the purpose of Rule 26(e)(1) altogether—under this theory, a party opposing supplementation could never be prejudiced by improper new expert opinions because the expert could be cross-examined

15

about those opinions at trial. The court refuses to apply such a liberal view of Rule 37(c)(1) here. The court finds that since Ebersole and Eckhardt's affidavits do not correct inaccuracies or add information that was unavailable at the time of the initial Rule 26 report, and the exclusions in Rule 37(c)(1) are inapplicable, the affidavits constitute improper supplementation under Rule 26.[7]  Since the court finds that the affidavits are not supplemental reports under Rule 26, they constitute untimely disclosed opinions and are barred.

---

[7]     In the response, Priester argues that Futuramic has asserted "in essence, that both documents in question are so-called 'sham affidavits'" and then delves into a lengthy discussion of the heavy legal burden that Futuramic bears to exclude an affidavit under the sham affidavit rule and how this burden has not been met. ECF No. 94 at 7. Since Futuramic never mentions or applies the sham affidavit rule in the briefing for this motion, it is unclear why Priester brings it up at all. In any case, the court finds that the affidavits are struck under Rule 26, which is an independent basis to strike.

   Priester also argues that Futuramic misconstrues Ebersole's testimony on Futuramic's role in Mr. Priester's accident, and that Futuramic should have asked Ebersole whether he had any opinions related to Futuramic. However, it is Priester's duty to produce a written expert report containing a "complete statement of all opinions" that experts will testify to. See Palmetto Pharm., 2012 WL 4369529, at *2 ("A party's failure to disclose in accordance with Rule 26 cannot be considered 'justified' or 'harmless' simply because the opposing party had an opportunity to depose the witness.").


## IV.   CONCLUSION

For the reasons set forth above, the court grants Futuramic's Motion to Strike or Exclude the Affidavits of Ebersole and Eckhardt and denies SAR's Motion to Exclude Ebersole.

**AND IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　DAVID C. NORTON
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

**January 18, 2017**
**Charleston, South Carolina**